**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAYD CURRIER, Individually and On Behalf of All Others Similarly Situated,<br><br>                                      Plaintiff,<br><br>                v.<br><br>INSYS THERAPEUTICS, INC., SANTOSH J. VETTICADEN and DARRYL S. BAKER,<br><br>                                      Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Kayd Currier ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to itself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through its attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Insys Therapeutics, Inc. ("Insys" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Insys securities between February 23, 2016 and March 15, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Insys, a specialty pharmaceutical company, develops and commercializes supportive care products. The Company markets Subsys, a sublingual fentanyl spray for breakthrough cancer pain in opioid-tolerant cancer patients in the United States. Its lead product candidate is Syndros, an orally administered liquid formulation of dronabinol. The Company is also developing Cannabidiol Oral Solution, a synthetic cannabidiol for childhood catastrophic epilepsy syndromes; and other product candidates, including other dronabinol line extensions and sublingual spray product candidates.

3.      Insys is headquartered in Chandler, Arizona. Insys's stock trades on the NASDAQ under the ticker symbol "INSY."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Insys had overstated its 2015 net revenue; (ii) Insys had misstated its sales allowances for 2016; (iii) accordingly, the Company lacked effective internal controls over financial reporting; and (iv) as a result of the foregoing, Insys's public statements were materially false and misleading at all relevant times.

5.      On March 15, 2017, post-market, Insys announced that it would delay the release of its financial results for the quarter and year ended December 31, 2016.  Insys advised investors that "[t]he Audit Committee of the Company's Board of Directors has been conducting an independent review of the Company's processes related to estimation of, and increases to, certain sales allowances recorded during 2016, with a potential reduction of 2015 net revenue and pre-tax income not expected to exceed $5 million, as well as extended payment terms offered to certain customers during the third quarter of 2016."

6.      On this news, Insys's share price fell $0.49, or 4.64%, to close at $10.06 on March 16, 2017.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and §27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). Insys's shares trade on the NASDAQ, located within this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached Certification, acquired Insys securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Insys is incorporated in Delaware. The Company's principal executive offices are located at 10220 South 51st Street, Suite 2, Phoenix, Arizona 85044. Insys's shares trade on the NASDAQ under the ticker symbol "INSY."

14.     Defendant John N. Kapoor served as the Company's Chief Executive Officer ("CEO") from November 2015 to January 2017.

15.     Defendant Darryl S. Baker ("Baker") has served at all relevant times as the Company's Chief Financial Officer ("CFO") since October 2012.

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Insys Therapeutics, Inc., a specialty pharmaceutical company, develops and commercializes supportive care products. The company markets Subsys, a sublingual fentanyl spray for breakthrough cancer pain in opioid-tolerant cancer patients in the United States. Its lead product candidate is Syndros, an orally administered liquid formulation of dronabinol. The company is also developing Cannabidiol Oral Solution, a synthetic cannabidiol for childhood

catastrophic epilepsy syndromes; and other product candidates, including other dronabinol line extensions and sublingual spray product candidates.

**Materially False and Misleading Statements Issued During the Class Period**

18.     The Class Period begins on February 23, 2016, when Insys issued a press release and filed a Current Report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter and year ended December 31, 2015 (the "2015 8-K"). For the quarter, Insys announced net income of $17.0 million, or $0.22 per diluted share, on net revenue of $91.1 million, compared to net income of $9.3 million, or $0.13 per diluted share, on net revenue of $66.5 million for the same period in the prior year, an increase of 38%.  For 2015, Insys announced net income of $58.48 million, or $1.38 per diluted share, on net revenue of $330.8 million, compared to net income of $37.98 million, or $1.07 per diluted share, on revenue of $222.1 million for 2014, an increase of 49%.

19.     On February 29, 2016, Insys filed an Annual Report on Form 10-K with the SEC, reiterating the financial and operating results previously announced in the Company's 2015 8-K, and reporting in full the Company's financial and operating results for the quarter and year ended December 31, 2015 (the "2015 10-K").

20.     The 2015 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the financial information contained in the 2015 10-K was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

21.     On April 28, 2016, Insys issued a press release and filed a current report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 8-K").  For the quarter, Insys reported net income of

$2.4 million, or $0.03 per diluted share, on net revenue of $62.0 million, compared to net income of $8.0 million, or $0.11 per diluted share, on net revenue of $70.8 million for the same period in the prior year.

22.     On May 5, 2016, Insys filed a Quarterly Report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Company's Q1 2016 8-K, and reporting in full the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q").  In the Q1 2016 10-Q, with respect to sales allowances, Insys stated, in part:

> We recognize estimated product sales allowances as a reduction of product sales in the same period the related revenue is recognized. Product sales allowances are based on amounts owed or to be claimed on the related sales. These estimates take into consideration the terms of our agreements with customers and third-party payors and the levels of inventory within the distribution channels that may result in future discounts taken. In certain cases, such as patient assistance programs, we recognize the cost of patient discounts as a reduction of revenue based on estimated utilization. If actual future results vary, we may need to adjust these estimates, which could have an effect on product revenue in the period of adjustment. Our product sales allowances include:

> *Product Returns.* We allow customers to return product for credit beginning six months prior to, and ending 12 months following, the product expiration date. The shelf life of Subsys is currently 36 months from the date of manufacture. We have monitored actual return history since product launch, which provides us with a basis to reasonably estimate future product returns, taking into consideration the shelf life of product at the time of shipment, shipment and prescription trends, estimated distribution channel inventory levels, and consideration of the introduction of competitive products.

> Because of the shelf life of our products and our return policy of issuing credits on returned product that is within six months before and up to 12 months after the product expiration date, there may be a significant period of time between when the product is shipped and when we issue credits on returned product. Accordingly, we may have to adjust these estimates, which could have an effect on product sales and earnings in the period of adjustment. The allowance for product returns is included in accrued sales allowances.

> *Wholesaler Discounts.* We offer discounts to certain wholesale distributors based on contractually determined rates. We accrue the discount as a

reduction of receivables due from the wholesalers upon shipment to the respective wholesale distributors and retail pharmacies.

*Prompt Pay Discounts*.   We offer cash discounts to our customers, generally 2.0% of the sales price, as an incentive for prompt payment. We account for cash discounts by reducing accounts receivable by the full amount.

*Patient Discount Programs*.   We offer discount card programs to patients for Subsys in which patients receive discounts on their prescriptions that are reimbursed to the retailer. We estimate the total amount that will be redeemed based on a percentage of actual redemption applied to inventory in the distribution and retail channel. The allowance for patient discount programs is included in accrued sales allowances.

*Rebates*.   We participate in certain rebate programs, which provide discounted prescriptions to qualified insured patients. Under these rebate programs, we pay a rebate to the third-party administrator of the program, generally two to three months after the quarter in which prescriptions subject to the rebate are filled. We estimate and accrue these rebates based on current contract prices, historical and estimated future percentages of products sold to qualified patients and estimated levels of inventory in the distribution channel. The allowance for rebates is included in accrued sales allowances.

*Chargebacks*.   We provide discounts primarily to authorized users of the FSS of the General Services Administration under an FSS contract negotiated by the Department of Veterans Affairs and various organizations under Medicaid contracts and regulations. These organizations purchase products from the wholesale distributors at a discounted price, and the wholesale distributors then charge back to us the difference between the current retail price and the price the organization paid for the product. We estimate and accrue chargebacks based on estimated wholesaler inventory levels, current contract prices and historical chargeback activity. Estimated chargebacks are recognized as a reduction of revenue in the same period the related revenue is recognized. The allowance for chargebacks is included as a reduction to accounts receivable.

23.     The Q1 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

24.     On August 3, 2016, Insys issued a press release and filed a current report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the

quarter ended June 30, 2016 (the "Q2 2016 8-K").  For the quarter, Insys reported net income of $4.4 million, or $0.06 per diluted share, on net revenue of $67.1 million, compared to net income of $7.3 million, or $0.10 per diluted share, on net revenue of $77.6 million for the same period in the prior year.

25.     On August 5, 2016, Insys filed a Quarterly Report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Company's Q2 2016 8-K, and reporting in full the Company's financial and operating results for the quarter ended June 30, 2016 (the "Q2 2016 10-Q").  In the Q2 2016 10-Q, with respect to sales allowances, Insys stated, in part:

> We recognize estimated product sales allowances as a reduction of product sales in the same period the related revenue is recognized. Product sales allowances are based on amounts owed or to be claimed on the related sales. These estimates take into consideration the terms of our agreements with customers and third-party payors and the levels of inventory within the distribution channels that may result in future discounts taken. In certain cases, such as patient assistance programs, we recognize the cost of patient discounts as a reduction of revenue based on estimated utilization. If actual future results vary, we may need to adjust these estimates, which could have an effect on product revenue in the period of adjustment. Our product sales allowances include:

> *Product Returns.* We allow customers to return product for credit beginning six months prior to, and ending 12 months following, the product expiration date. The shelf life of Subsys is currently 36 months from the date of manufacture. We have monitored actual return history since product launch, which provides us with a basis to reasonably estimate future product returns, taking into consideration the shelf life of product at the time of shipment, shipment and prescription trends, estimated distribution channel inventory levels, and consideration of the introduction of competitive products.

> Because of the shelf life of our products and our return policy of issuing credits on returned product that is within six months before and up to 12 months after the product expiration date, there may be a significant period of time between when the product is shipped and when we issue credits on returned product. Accordingly, we may have to adjust these estimates, which could have an effect on product sales and earnings in the period of adjustment. The allowance for product returns is included in accrued sales allowances.

*Wholesaler and Retailer Discounts.*    We offer discounts to certain wholesale distributors and specialty retailers based on contractually determined rates. We accrue the discount as a reduction of receivables due from the wholesalers and retailers upon shipment to the respective wholesale distributors and retail pharmacies.

*Prompt Pay Discounts*.    We offer cash discounts to our customers, generally 2.0% of the sales price, as an incentive for prompt payment. We account for cash discounts by reducing accounts receivable by the full amount.

*Patient Discount Programs*.    We offer discount card programs to patients for Subsys in which patients receive discounts on their prescriptions that are reimbursed to the retailer. We estimate the total amount that will be redeemed based on a percentage of actual redemption applied to inventory in the distribution and retail channel. The allowance for patient discount programs is included in accrued sales allowances.

*Rebates*.    We participate in certain rebate programs, which provide discounted prescriptions to qualified insured patients. Under these rebate programs, we pay a rebate to the third-party administrator of the program, generally two to three months after the quarter in which prescriptions subject to the rebate are filled. We estimate and accrue these rebates based on current contract prices, historical and estimated future percentages of products sold to qualified patients and estimated levels of inventory in the distribution channel. The allowance for rebates is included in accrued sales allowances.

*Chargebacks.*    We provide discounts primarily to authorized users of the FSS of the General Services Administration under an FSS contract negotiated by the Department of Veterans Affairs and various organizations under Medicaid contracts and regulations. These organizations purchase products from the wholesale distributors at a discounted price, and the wholesale distributors then charge back to us the difference between the current retail price and the price the organization paid for the product. We estimate and accrue chargebacks based on estimated wholesaler inventory levels, current contract prices and historical chargeback activity. Estimated chargebacks are recognized as a reduction of revenue in the same period the related revenue is recognized. The allowance for chargebacks is included as a reduction to accounts receivable.

26.    The Q2 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal controls over financial reporting.

9

27.     On November 3, 2016, Insys issued a press release and filed a current report on Form 8-K with the SEC, announcing certain of the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 8-K").  For the quarter, Insys reported net income of $190,000, or zero per diluted share, on net revenue of $55.2 million, compared to net income of $26.1 million, or $0.34 per diluted share, on net revenue of $91.3 million for the same period in the prior year.

28.     On November 3, 2016, Insys also filed a Quarterly Report on Form 10-Q with the SEC, reiterating the financial and operating results previously announced in the Company's Q3 2016 8-K, and reporting in full the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q3 2016 10-Q").  In the Q3 2016 10-Q, with respect to sales allowances, Insys stated, in part:

> We recognize estimated product sales allowances as a reduction of product sales in the same period the related revenue is recognized. Product sales allowances are based on amounts owed or to be claimed on the related sales. These estimates take into consideration the terms of our agreements with customers and third-party payors and the levels of inventory within the distribution channels that may result in future discounts taken. In certain cases, such as patient assistance programs, we recognize the cost of patient discounts as a reduction of revenue based on estimated utilization. If actual future results vary, we may need to adjust these estimates, which could have an effect on product revenue in the period of adjustment. Our product sales allowances include:

> *Product Returns.* We allow customers to return product for credit beginning six months prior to, and ending 12 months following, the product expiration date. The shelf life of Subsys is currently 36 months from the date of manufacture. We have monitored actual return history since product launch, which provides us with a basis to reasonably estimate future product returns, taking into consideration the shelf life of product at the time of shipment, shipment and prescription trends, estimated distribution channel inventory levels, and consideration of the introduction of competitive products.

> Because of the shelf life of our products and our return policy of issuing credits on returned product that is within six months before and up to 12 months after the product expiration date, there may be a significant period of time between when the product is shipped and when we issue credits on returned product.

Accordingly, we may have to adjust these estimates, which could have an effect on product sales and earnings in the period of adjustment. The allowance for product returns is included in accrued sales allowances.

*Wholesaler and Retailer Discounts.*   We offer discounts to certain wholesale distributors and specialty retailers based on contractually determined rates. We accrue the discount as a reduction of receivables due from the wholesalers and retailers upon shipment to the respective wholesale distributors and retail pharmacies.

*Prompt Pay Discounts*.   We offer cash discounts to our customers, generally 2% of the sales price, as an incentive for prompt payment. We account for cash discounts by reducing accounts receivable by the full amount.

*Patient Discount Programs*.   We offer discount card programs to patients for Subsys in which patients receive discounts on their prescriptions that are reimbursed to the retailer. We estimate the total amount that will be redeemed based on a percentage of actual redemption applied to inventory in the distribution and retail channel. The allowance for patient discount programs is included in accrued sales allowances.

*Rebates*.   We participate in certain rebate programs, which provide discounted prescriptions to qualified insured patients. Under these rebate programs, we pay a rebate to the third-party administrator of the program, generally two to three months after the quarter in which prescriptions subject to the rebate are filled. We estimate and accrue these rebates based on current contract prices, historical and estimated future percentages of products sold to qualified patients and estimated levels of inventory in the distribution channel. The allowance for rebates is included in accrued sales allowances.

*Chargebacks.*   We provide discounts primarily to authorized users of the FSS of the General Services Administration under an FSS contract negotiated by the Department of Veterans Affairs and various organizations under Medicaid contracts and regulations. These organizations purchase products from the wholesale distributors at a discounted price, and the wholesale distributors then charge back to us the difference between the current retail price and the price the organization paid for the product. We estimate and accrue chargebacks based on estimated wholesaler inventory levels, current contract prices and historical chargeback activity. Estimated chargebacks are recognized as a reduction of revenue in the same period the related revenue is recognized. The allowance for chargebacks is included as a reduction to accounts receivable.

29.   The Q3 2016 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that the financial information contained in the Q3 2016 10-Q was

11

accurate and disclosed any material changes to the Company's internal controls over financial reporting.

30.    The statements referenced in ¶¶ 18-29 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Insys had overstated its 2015 net revenue; (ii) Insys had misstated its sales allowances for 2016; (iii) accordingly, the Company lacked effective internal controls over financial reporting; and (iv) as a result of the foregoing, Insys's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

31.    On March 15, 2017, post-market, Insys announced that it would delay the release of its financial results for the quarter and year ended December 31, 2016.  In a press release, Insys stated, in part:

> PHOENIX, March 15, 2017 (GLOBE NEWSWIRE) -- Insys Therapeutics, Inc. (NASDAQ:INSY) ("Insys" or "the Company") today announced that the Company will delay the release of its financial results for the fourth quarter and full year 2016. *The Audit Committee of the Company's Board of Directors has been conducting an independent review of the Company's processes related to estimation of, and increases to, certain sales allowances recorded during 2016, with a potential reduction of 2015 net revenue and pre-tax income not expected to exceed $5 million*, as well as extended payment terms offered to certain customers during the third quarter of 2016.
>
> As a result of the review, which is on-going, the Company does not expect to announce its fourth quarter and full year 2016 financial results on March 16, 2017, as previously planned.  The Company has filed a notification of late filing on Form 12b-25 with the Securities and Exchange Commission to obtain an automatic 15-day extension of the filing deadline for its Annual Report on Form 10-K for the fiscal year ended December 31, 2016. Based upon available information, the Company expects that it will be able to complete the preparation and filing of the Form 10-K within the extension period.
>
> The Company and the Audit Committee are working diligently to complete their review and the Company will make a further announcement regarding updated

timing of its release of financial results and a related conference call once the review is completed.

32.     On this news, Insys's share price fell $0.49, or 4.64%, to close at $10.06 on March 16, 2017.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Insys securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Insys securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Insys or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Insys;

- whether the Individual Defendants caused Insys to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Insys securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

14

40.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Insys securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Insys securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Insys securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Insys securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Insys securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Insys's finances and business prospects.

47.     By virtue of their positions at Insys, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended

thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Insys, the Individual Defendants had knowledge of the details of Insys's internal affairs.

49.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Insys. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Insys's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Insys securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Insys's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Insys securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

50.     During the Class Period, Insys securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Insys securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Insys securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Insys securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

51.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of Insys, and conducted and participated, directly and indirectly, in the conduct of Insys's business affairs.  Because of their senior positions, they knew the adverse non-public information about Insys's misstatement of income and expenses and false financial statements.

55.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Insys's financial condition and results of operations, and to correct promptly any public statements issued by Insys which had become materially false or misleading.

56.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Insys disseminated in the marketplace during the Class Period concerning Insys's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Insys to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Insys within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Insys securities.

57.     Each of the Individual Defendants, therefore, acted as a controlling person of Insys. By reason of their senior management positions and/or being directors of Insys, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Insys to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Insys and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

58.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Insys.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 17, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
           ahood@pomlaw.com
hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*

**Submission Date**

2017-03-16 20:27:36

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.    I  make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against against Insys Therapeutics, Inc. ("Insys" or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Insys securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Insys securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Insys securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

## Name

**Print Name**

Kayd Currier

## Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| 2/22/17 | 7 | 13.35 |
| 2/23/17 | 13 | 13.00 |

## Sales

# Documents & Message

**Signature**



**Full Name**

Kayd Currier



**INSYS THERAPEUTICS, INC. (INSY)**                                    **Currier, Kayd**

### LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 2/22/2017 | Purchase | 7 | $13.3500 |
| 2/23/2017 | Purchase | 13 | $13.0000 |